# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| HAROLD HELLUMS, | ) | |
| --- | --- | --- |
| Petitioner, | ) | |
| v. | ) | CAUSE NO.: 3:15-CV-85 TLS |
| SUPERINTENDENT, | ) | |
| Respondent. | ) | |

## OPINION AND ORDER

Harold Hellums, a pro se prisoner, filed a habeas corpus petition raising two grounds to challenge his conviction and 50-year sentence for attempting to deal methamphetamine as a habitual offender by the Daviess Superior Court under Cause Number 14D01-9904-CF-278. (Habeas Corpus Pet. 1, ECF No. 1.) "Federal habeas review . . . exists as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) (internal quotation marks and citation omitted).

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> [This] standard is intentionally difficult to meet. We have explained that clearly established Federal law for purposes of §2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions. And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. To satisfy this high bar, a habeas petitioner is required to

> show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Donald*, 135 S. Ct. at 1376. (internal quotation marks and citations omitted).

**A.     Ineffective Assistance of Trial Counsel**

In Ground One, Hellums argues that his three public defenders provided him with ineffective assistance of counsel during his pre-trial and trial proceedings. In its opinion on appeal from the denial of post-conviction relief, the Court of Appeals of Indiana explained the sequential representation of Hellums by these three attorneys.

> On April 16, 1999, Attorney Tim Dant (Attorney Dant) was appointed as counsel. On September 10, 1999, Attorney Dant filed a motion to withdraw as Hellums' counsel, which was granted by the trial court. Five days later, on September 15, 1999, Attorney Dant, sitting as Judge *Pro Tempore*, granted the State's Motion on the Habitual Offender Enhancement and set the matter for an initial hearing. On October 12, 1999, Attorney J. D. Dwyer (Attorney Dwyer) was appointed but he withdrew on March 23, 2000, due to illness. Thereafter, on April 17, 2000, Attorney Christopher Ramsey (Attorney Ramsey) was appointed to represent Hellums.

(*Hellums v. State*, No. 14A01-1402-PC-67, slip op. at 2–3 (Ind. Ct. App. Nov. 6, 2014), ECF No. 6-11.)

Under the Sixth Amendment, a criminal defendant is entitled to "effective assistance of counsel—that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." *Bobby v. Van Hook*, 558 U.S. 4, 7 (2009) (internal quotation marks omitted). To prevail on such a claim, the petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). On the deficiency prong, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562

U.S. 86, 105 (2011) (internal quotation marks omitted). The Court's review of counsel's performance is deferential, and there is an added layer of deference when the claim is raised in a habeas proceeding. *Id.* ("[T]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."). Furthermore, "counsel 'need not be perfect, indeed not even very good, to be constitutionally adequate.'" *McAfee v. Thurmer*, 589 F.3d 353, 355–56 (7th Cir. 2009) (quoting *Dean v. Young*, 777 F.2d 1239, 1245 (7th Cir. 1985)).

In assessing counsel's performance, the court must "evaluate [counsel's] performance as a whole rather than focus on a single failing or oversight, " *Ebert v. Gaetz*, 610 F.3d 404, 411–12 (7th Cir. 2010), and must respect its "limited role in determining whether there was manifest deficiency in light of information then available to counsel," *Premo v. Moore*, 562 U.S. 115, 125 (2011). Counsel is given significant discretion to select a trial strategy based on the information known to him at the time. *See Yu Tian Li v. United States*, 648 F.3d 524, 528 (7th Cir. 2011) ("So long as an attorney articulates a strategic reason for a decision that was sound at the time it was made, the decision generally cannot support a claim of ineffective assistance of counsel."); *United States v. Lathrop*, 634 F.3d 931, 937 (7th Cir. 2011) (observing that as long as counsel's reasons were not "'so far off the wall that we can refuse the usual deference that we give tactical decisions by counsel,' his performance will not qualify as deficient" (quoting *Cage v. McCaughtry*, 305 F.3d 625, 627 (7th Cir. 2002))).

On the prejudice prong, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "In assessing prejudice under *Strickland*, the question

is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Richter*, 562 U.S. at 111. "The likelihood of a different result must be substantial, not just conceivable." *Id.* at 112. Where it is expedient to do so, the court may resolve an ineffective assistance claim solely on the prejudice prong, because if the petitioner cannot establish prejudice, there is no need to "grade" counsel's performance. *Strickland*, 466 U.S. at 697.

1. ***Attorney Dant***

   Hellums argues that Attorney Dant:

   failed to conduct a professional investigation into the facts and circumstances of this case, failed to conduct professional interviews of available defense witnesses, failed to file the Motion for Speedy Trial requested by Hellums, failed to depose State witnesses, violated attorney-client responsibility by acting as Special Judge against Hellums within a few days after withdrawing from the case, failed to communicate and consult with Hellums, and failed to timely file the alibi defense.

(Habeas Corpus Pet. 3.)

The Respondent argues that the Special Judge issue is procedurally defaulted because it was not properly presented to the State courts. Although the Court of Appeals of Indiana found that claim was defaulted because it "was available to be raised on direct appeal," (*Hellums*, No. 14A01-1402-PC-67, slip op. at 8), it also found that "Hellums' claim must fail as he did not demonstrate that, in the absence of this perceived ineffectiveness, the outcome of this case would have been different," (*id*. at 12.) Moreover, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). Therefore, the court will consider

4

the merits of all of Hellums's allegations that Attorney Dant provided ineffective assistance of counsel.

Hellums argues that:

> Had Dant conducted a professional investigation Dant would have discovered that Hellums was not involved in Tim Meinhart's meth operation, and that Hellums broke off his engagement to Zoe Meinhart when she refused to take legal action against her ex-husband. Hellums never returned to the Meinhart property. Had Dant investigated, Dant would then have discovered that the Probable Cause Affidavit of April 8, 1999 by Officer Todd Church falsely claimed that Harold Hellums was at the meth trailer at the time of the police raid on March 18, 1999. This false claim was based on the hearsay statement of Rhonda [Roland],[1] who was involved with Tim Meinhart in the manufacture of meth and who was found by police at the meth trailer at 3:30 A.M. on March 18, 1999. [Roland]'s information was wrong, because the person who ran away from the trailer at the time of the police raid was Matt Hayes, who admitted that fact in his deposition and in his trial testimony. Hayes also testified that Harold Hellums was not at the trailer or in the house at the time of the police raid, and further that Hellums was never on the Meinhart property during the month of March.
> Had Dant interviewed Zoe Meinhart or Amanda Meinhart, Dant would have learned that Hellums moved out of the Meinhart residence at the end of February 1999, and never returned. Dant would also have learned that Hellums opposed Tim Meinhart's meth operation on Zoe's property, resulting in the physical confrontation between Tim Meinhart and Hellums. Further, Dant failed to professionally interview Lionel Bogard, Matt Hayes, and Kim Traywick, key witnesses who would have affirmed that Hellums was never on the Meinhart property at the time of the police raid or at any time during March, 1999.

(Mem. Law Supp. Traverse to Resp't's Order to Show Cause 12–13, ECF No. 9.) The Court of Appeals of Indiana found that Hellums had not demonstrated prejudice because there was no indication that "the result of the proceeding would have been different." (*Hellums*, No. 14A01-1402-PC-67, slip op. at 6.) Given the facts in the record, that was not an unreasonable determination.

---

[1] The Petitioner spells this individual's last name as "Rowland," but the trial transcript spells her last name as "Roland." For consistency, this Court will refer to this individual as "Roland."

Attorney Dant did not represent Hellums at trial. Rather, he represented him for only five months at the beginning of the case. Hellums has not even alleged, much less demonstrated, that any of the information he wanted gathered became unavailable as a result of delay. Indeed, much of the information was either personally known to Hellums, presented at his trial, or contradicted during his trial. At his initial hearing on April 19, 1999, Hellums testified under oath that he lived with Zoe Meinhart and helped pay bills. (Trial Tr. vol. 2, 14–15, June 18, 2001, ECF No. 12.) Amanda Elaine Meinhart testified that in March 1999, she and her brother lived with Hellums and her mother, Zoe Meinhart. (*Id*. vol. 3, 342.) Amanda also testified that Hellums had been living there for about seven months, (*id*. at 343), and that Hellums was at the house on March 18, 1999, both during the day and that evening, (*id*. at 345.) She further testified that Hellums "spent most of the time in the trailer," which had been at the house for a month or two (*id*. at 346), and the trailer was visited by his friends, including Tim Meinhart, Matt Hayes, and Scotty Rayhill, (*id*.) According to Amanda's testimony, Matt Hayes came to the house looking for Hellums that evening. (*Id.* at 352.) Amanda also testified that Rhonda Roland came to the house looking for Tim Meinhart. (*Id*. at 350.)

Rhonda Roland testified that she had known Hellums "all [her] life," (*id*. vol. 2, 164), and that she was at the trailer on March 18, 1999, when the police arrived, (*id*. at 167.) She testified that Hellums, Tim Meinhart, and Scotty Rayhill were in the trailer. (*Id*.) She further testified that Hellums handed her a jar and ran from the trailer when the police arrived. (*Id*. at 168.) Roland testified that she told the police that Hellums fled from the trailer just before they arrived, (*id*. at 172), which she recounted as Hellums fled after Matt Hayes opened the trailer door and alerted them that the police were coming, (*id*. at 174.)

6

Lionel A. Bogard testified that he owned the trailer and stored it at Rhonda Roland's sister's house in January 1999. (*Id*. vol. 3, 425.) He testified that, in February, he rented the trailer to Tim Meinhart and it was moved to Zoe Meinhart's house. (*Id*. at 425–26.) Matthew Hayes testified that he went to Zoe Meinhart's house on March 17, 1999. (*Id*. at 435.) He testified that he returned on March 18, 1999 in the early morning, and found Rhonda Roland, Scotty Rayhill, and Tim Meinhart in the trailer. (*Id*. at 436.) Hayes testified that he told them about the police and then walked around the house. (*Id*. at 438.) Although Hayes testified that Hellums was dating Zoe Meinhart at the time, he stated that he did not know if Hellums lived in the house with her (*id.* at 441–42) and he did not see Hellums in the trailer or at the house, (*id.* at 440.) Based on this testimony from Amanda, Roland, Bogard, and Hayes, Hellums has not demonstrated that the Court of Appeals of Indiana acted unreasonably by finding that his trial would not have had a different outcome, even if Attorney Dant had conducted a more thorough investigation.

In his Petition, Hellums alleged that Attorney Dant was ineffective for not filing a speedy trial motion. The Court of Appeals of Indiana also adjudicated this claim and found that Hellums had not demonstrated that "the result of the proceeding would have been different." (*Hellums*, No. 14A01-1402-PC-67, slip op. at 6.) In his Traverse, Hellums makes only a single reference to the speedy trial motion, which appears in the title for this section of his brief and merely identifies that he raised this claim in his Petition. (Mem. Law Supp. Traverse 12.) Hellums has not argued this issue or explained how its adjudication was unreasonable. Pursuant to 28 U.S.C. § 2254(d), habeas corpus relief can only be granted where the State court's adjudication of a claim was unreasonable. Because Hellums has not presented any basis for finding the State's adjudication unreasonable, this alleged deficiency is not a basis for habeas corpus relief.

7

Hellums also argues that "alibi witnesses were not interviewed or called to testify due to the gross incompetence and indifference of public defender Dant, who failed to file a Notice of Alibi Defense. As a result, Hellums was severely prejudiced because the jury never heard available exculpatory evidence before rendering a verdict in this case." (Mem. Law Supp. Traverse at 16.) The Court of Appeals of Indiana adjudicated this claim and found that there was no factual basis for filing a notice of alibi. (*Hellums*, No. 14A01-1402-PC-67, slip op. at 7.) Although Hellums argues that exculpatory evidence existed, he did not produce that evidence during his post-conviction relief proceedings. As such, there is no basis for finding that the State court adjudication was unreasonable or that there is any basis for habeas corpus relief on this issue.

Hellums also claims that Attorney Dant "violated attorney-client responsibility by acting as Special Judge against Hellums within a few days after withdrawing from the case." (Habeas Corpus Pet. 3.) The Court of Appeals of Indiana explained

> that Attorney Dant acted as judge *pro tempore* a mere five days after he withdrew his representation. In this temporary position, Attorney Dant signed the order granting the State's Motion on the Habitual Enhancement. However, as ineffective assistance of counsel refers to the quality of an attorney's representation of a client, it logically follows that the conduct of the attorney after representation has ended is not covered by this doctrine. Rather, Hellums' allegation is more properly characterized as a conflict of interest between Attorney Dant's duties as Hellums' counsel and his obligations as a judge *pro tempore*.

(*Hellums*, No. 14A01-1402-PC-67, slip op. at 7.) In his Traverse, Hellums asserts that he "did not argue that Dant's actions were a conflict of interest," but rather "that Dant would have recognized Hellums [sic] name within 5 days after his withdrawal if he had rendered zealous advocacy during the 5 months of his representation, and this failure to recognize Hellums is clear

8

proof that Dant had ignored his client during the 5 months of his representation." (Mem. Law Supp. Traverse 14–15.)

Neither theory is a basis for habeas corpus relief because Hellums has not demonstrated that he was prejudiced in either scenario. To the extent that signing the motion adding a habitual offender count was a conflict of interest, Hellums has not demonstrated that the motion would not have been granted by some other judge if Attorney Dant had recused himself. To the extent that Hellums is merely arguing that not remembering his name is prima facie proof of prior deficient performance, he still has not demonstrated prejudice based on any of the alleged omissions of Attorney Dant. Therefore, Hellums's assertions that Attorney Dant provided ineffective assistance of counsel are not a basis for habeas corpus relief.

**2.**     ***Attorney Dwyer***

Hellums argues that:

> Public defender J.D. Dwyer failed to conduct a professional investigation into the facts and circumstances of this case, failed to interview available defense witnesses, and failed to act as a zealous advocate for Hellums due to his serious illness from cancer, in that Dwyer was effectively dying from cancer during his representation of Hellums. Hellums was prejudiced by the lack of effective representation during pretrial due to Dwyer's illness.

(Habeas Corpus Pet. 3.) The Court of Appeals of Indiana found that the record "fails to satisfy the showing that Attorney Dwyer's performance fell below an objective standard of reasonableness." (*Hellums*, No. 14A01-1402-PC-67, slip op. at 8.) Hellums argues that he "was severely prejudiced" by Attorney Dwyer's omissions. (Mem. Law Supp. Traverse 18.) However, as with Attorney Dant, he has not even alleged, much less demonstrated, that any of the information he wanted gathered became unavailable as a result of delay. The ruling of the Court

9

of Appeals of Indiana was not unreasonable and Hellums' allegations against Attorney Dwyer are not a basis for habeas corpus relief.

3. *Attorney Ramsey*

Hellums argues that:

> Public defender Chris Ramsey failed to conduct a professional investigation into the facts and circumstances of this case, failed to conduct professional interviews of available defense witnesses, failed to depose State witnesses, failed to communicate and consult with Hellums, failed to object and challenge prejudicial evidence and perjured testimony, and failed to prepare Hellums [sic] trial testimony.

(Habeas Corpus Pet. 3.) The Court of Appeals of Indiana found that "Attorney Ramsey was prepared for trial and performed effectively. Merely because Hellums did not agree with Attorney Ramsey's efforts and strategy, this disagreement does not raise to [sic] an ineffective assistance of counsel issue." (*Hellums*, No. 14A01-1402-PC-67, slip op. at 9–10.) The Court of Appeals of Indiana summarized Attorney Ramsey's actions during the trial court proceedings:

> Attorney Ramsey unsuccessfully objected and requested a mistrial when the State added the attempted dealing in methamphetamine charge on the second day of trial. Likewise, Attorney Ramsey objected to the jury instruction related to this added attempt charge. He also unsuccessfully requested more time to prepare a defense on those grounds. Attorney Ramsey objected to the habitual offender charge and filed a notice of alibi. He objected to a witness' testimony as being in violation of an order *in limine*. According to Hellums' count, Attorney Ramsey objected fifty-seven times at various points during the trial, all of which were overruled.

(*Id*. at 9.)

In his Traverse, Hellums lists four specific instances where he believes Attorney Ramsey was ineffective. First, Hellums argues that Attorney Ramsey was ineffective because he did not challenge the probable cause affidavit. Hellums argues that Rhonda Roland lied when she told the police "that the third male subject who had taken off running was an Eddie Hellums (Harold

10

E. Hellums)." (App. to Br. Def.-Appellant vol. 1, 18, Aug. 28, 2001, ECF No. 12.) It appears that Hellums believes that because Matthew Hayes testified that he (Matthew Hayes) fled from the trailer, the arrest warrant for Hellums was invalid and he should not have been put on trial. However, he provides no explanation for why the police should not have believed Rhonda Roland.

"Probable cause exists if, at the time of the arrest, the facts and circumstances within the [officer's] knowledge 'are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed . . . an offense." *Lawson v. Veruchi*, 637 F.3d 699, 703 (7th Cir. 2011) (quoting *Chelios v. Heavener*, 520 F.3d 678, 686 (7th Cir. 2008)). Here, Roland was apprehended at the trailer and accurately told the police that it contained a methamphetamine lab before they searched it. (App. to Br. Def.-Appellant 18.) At the time she was apprehended, she also told the police that Hellums had fled the trailer. The corroboration of the trailer's contents provided a sufficient basis for the police to believe her when she identified Hellums. At trial, Attorney Ramsey called Matthew Hayes as a defense witness. Hayes testified that he fled the trailer. His testimony was not conclusive proof that Roland was lying when she testified at trial that Hellums fled the trailer. Indeed, it was not even a direct contradiction. At most, it was merely a potential inconsistency for the jury to weigh. Therefore, it was not unreasonable for the Court of Appeals of Indiana to have found that Attorney Ramsey was not ineffective for having failed to challenge the probable cause affidavit.

Second, Hellums argues that Attorney Ramsey was ineffective because he "did not challenge the false statements and sworn testimony of Tim Meinhart, who had attempted to coerce his daughter, Amanda Meinhart, into falsely testified [sic] that Hellums was involved with Tim Meinhart's meth operation and that Hellums was at the meth trailer at the time of the

11

police raid." (Mem. Law Supp. Traverse 19.) However, Tim Meinhart did not testify during Hellums's trial, so there was no testimony for Attorney Ramsey to have challenged. Amanda Meinhart testified, but she did not testify that Hellums was involved in the methamphetamine operation, or that he was at the trailer when the police arrived. Instead, she testified that Hellums "made wooden jewelry boxes" in the trailer. (Trial Tr. vol. 3, 348.) Moreover, Attorney Ramsey elicited on cross examination that Amanda had been contacted and asked to lie under oath. (*Id.* at 351.) On re-direct, she testified that Tim Meinhart had asked her to lie. Therefore, it was not unreasonable for the Court of Appeals of Indiana to find that Attorney Ramsey was not ineffective regarding the testimony of Tim Meinhart.

Third, Hellums argues that Attorney Ramsey was ineffective because he did not interview him adequately to be prepared for trial. He argues that Attorney Ramsey "advised the post-conviction court that he could not properly represent Hellums [with Hellums being housed at the Indiana State Farm] since he could not afford to travel 200 miles for just one client." (Mem. Law Supp. Traverse 19.) This is not true. During the post-conviction hearing Hellums asked Attorney Ramsey, "Do you feel that you was adequately prepared for a jury trial on the day that we went with me so far away?" (Post-Conviction Relief Tr., vol. 1, 34, May 5, 2014, ECF No. 12.) In response, Attorney Ramsey stated, "I mean as far as I recollect, yes." (*Id.*) Later during that hearing, Hellums asked, "Isn't true that you was prepared . . . for the five charges that they had on me?" (*Id.* at 47.) Attorney Ramsey responded, "I would like to think I was, yes. . . . I mean my exact recollection, I didn't ask for a continuance prior to trial or the day of trial and so I would say, yes, I was prepared to argue the . . . or prepared to do the case." (*Id.*) Therefore, it was not unreasonable for the Court of Appeals of Indiana to have found that Attorney Ramsey was not ineffective by not being prepared for trial.

Fourth, Hellums argues that Attorney Ramsey was ineffective because he "never learned of the numerous defense witnesses who could present testimony supporting Hellums [sic] actual innocence claim, and as a result the jury never heard all the material and relevant facts of this case before rendering the guilty verdict on attempting to deal meth." (Mem. Law Supp. Traverse 19 (internal quotation marks omitted).) Despite alleging that numerous witnesses would have testified that he was innocent, Hellums did not submit the testimony of any such witnesses during his post-conviction relief proceedings. Because he did not present any evidence demonstrating that these witnesses ever existed, it was not unreasonable for the Court of Appeals of Indiana to have found that Attorney Ramsey was not ineffective.

Specifically, Hellums argues that "Ramsey failed to properly challenge the false testimony of jail house informant, Mark Frazer, who received compensation for his cooperation with the State and his testimony that Hellums had confessed his guilt to Frazer in the county jail." (Mem. Law Supp. Traverse 19–20.) However, he gives no explanation as to what he thinks should have been done. On direct examination, the prosecuting attorney elicited testimony from Frazer about the plea agreement, which required that he testify against Hellums. Frazer testified that, under the plea agreement, "I was to provide truthful testimony against Harold Hellums, and I was to provide truthful testimony against Ronald D. Osborne in exchange for an open Class B felony with a ten year cap." (Trial Tr. vol. 3, 310.)

On cross examination, Attorney Ramsey elicited testimony that, but for the plea agreement, the maximum sentence for a Class B felony was 20 years and that he received 10 years because of the plea agreement. (*Id.* at 316.) Attorney Ramsey also had Frazer admit that three other charges were dismissed (*id.*), as well as testimony that Frazer had been convicted of six crimes of dishonesty, (*id.* at 327–29.) Attorney Ramsey then cross examined Frazer about his

conversations with Hellums in the jail. (*Id.* at 329–35.) On re-cross examination, Attorney Ramsey had Frazer testify that the State had provided him with the street clothes he was wearing at trial so that he would not have to appear in a prison uniform. (*Id.* at 341.) Based on the record, there is nothing unreasonable about the Court of Appeals of Indiana finding that Attorney Ramsey did not render ineffective assistance.

B. **Ineffective Assistance of Appellate Counsel**

In Ground Two, Hellums argues that his appellate public defender, Greg Lewis, provided ineffective assistance of counsel because he "failed to challenge on direct appeal the defective probable cause affidavit that was based on hearsay, failed to challenge the Attempted Dealing instruction, and failed to raise the late filing of amended charges." (Habeas Corpus Pet. 4.) The Respondent argues that Ground Two is procedurally defaulted because Hellums did not present those issues to the State courts. "To avoid procedural default, a habeas petitioner must fully and fairly present his federal claims to the state courts." *Anderson v. Benik*, 471 F.3d 811, 814–15 (7th Cir. 2006) (quoting *Boyko v. Parke*, 259 F.3d 781, 788 (7th Cir. 2001)). "This means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory." *Lewis v. Sternes*, 390 F.3d 1019, 1025–26 (7th Cir. 2004).

In his Traverse, Hellums did not dispute that this ground is procedurally defaulted and a review of the record demonstrates that it is. On appeal from the denial of post-conviction relief, Hellums raised an ineffective assistance of appellate counsel claim in his petition to transfer, but he did not mention any of the three instances that he has included in his habeas corpus petition. Rather, he argued that "Greg Lewis was ineffective for improperly raising an issue of amelioration which had no merit, and for failing to raise public defender Dant's conflict of

14

interest by Dant's failure to file the alibi defense due to the lack of investigation and interviews, and Dant's acting on behalf of the State as a pro temp judge after his withdrawal." (Pet. to Transfer 12, ECF No. 6-12.) Thus, the alleged instances of ineffective appellate counsel are procedurally defaulted.

Nevertheless, procedural default can be excused, "if the petitioner can . . . demonstrate that the district court's failure to consider the claim would result in a fundamental miscarriage of justice." *Richardson v. Lemke*, 745 F.3d 258, 272 (7th Cir. 2014). To demonstrate a fundamental miscarriage of justice, the petitioner must prove that "constitutional error has resulted in the conviction of one who is actually innocent of the crime." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Hellums argues that "[t]his case represents a fundamental miscarriage of justice [because] . . . . There was no credible, reliable evidence that Harold Hellums was involved in the manufacture or attempted dealing of illegal drugs." (Mem. Law Supp. Traverse 20.) "[T]enable actual-innocence gateway pleas are rare: 'A petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013) (quoting *Schlup*, 513 U.S. at 329). A petitioner who asserts actual innocence "must *demonstrate* innocence; the burden is his, not the state's . . . ." *Buie v. McAdory*, 341 F.3d 623, 626–27 (7th Cir. 2003). To do so, he must come forward "with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324.

Here, Hellums has not provided any new evidence. This alone precludes finding that he has demonstrated actual innocence. Hellums argues that Rhonda Roland's testimony that she saw him at the trailer with others where methamphetamine was being manufactured should not be

15

believed because it was contradicted by the testimony of others at trial. But contradictory testimony was presented at trial and the discrepancies were argued during closing. (Trial Tr. vol. 3, 472–77.) The jury found Hellums guilty. He did not raise a freestanding claim that there was insufficient evidence to have done so. But even if he had, "[t]he standard of review [for such a claim] is a rigorous one: evidence, viewed in the light most favorable to the State, is sufficient to support a conviction so long as any rational trier of fact could find the essential elements of the offense to have been proved beyond a reasonable doubt." *Jones v. Butler*, 778 F.3d 575, 581 (7th Cir. 2015) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Here, such a claim, even if it had been raised, would not be a basis for habeas corpus relief because the evidence most favorable to the State includes testimony that he handed Rhonda Roland a glass jar and fled from the trailer where methamphetamine was being manufactured when the police arrived. It also includes Mark Frazer's testimony that Hellums confessed. As such, there was sufficient evidence presented at trial for a rational juror to have found Hellums guilty. Hellums has not overcome procedural default and Ground Two is not a basis for habeas corpus relief.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, the Court must consider whether to grant a certificate of appealability. To obtain a certificate of appealability under 28 U.S.C. § 2253(c), the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted). For the reasons previously explained,

Hellums has not done so. There is no reason to encourage him to proceed further and he will be denied a certificate of appealability.

## CONCLUSION

For these reasons, the Habeas Corpus Petition [ECF No. 1] is DENIED. Harold Hellums is DENIED a certificate of appealability. The clerk is DIRECTED to close this case.

SO ORDERED on May 17, 2016.

s/ Theresa L. Springmann  
THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT  
FORT WAYNE DIVISION